1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| MATTHEW E. SANCHEZ,<br><br>                  Plaintiff,<br><br>    v.<br><br>THE STATE OF WASHINGTON,<br>WASHINGTON STATE PATROL,<br>CARLOS RODRIGUEZ, MAURICE<br>RINCON, TRAVIS CALTON, WILLIAM<br>STEEN, MICHAEL PEASE; JOHN DOE<br>AND JANE DOE 1-10,<br><br>                  Defendants. | CASE NO. 3:21-cv-05915-RJB<br><br>ORDER ON STATE<br>DEFENDANTS' MOTIONS FOR<br>SUMMARY JUDGMENT |

18

19

20

21

22

    This matter comes before the Court on the State of Washington, Washington State Patrol, Carlos Rodriguez, Maurice Rincon, Travis Calton, William Steen and Michael Pease's (collectively, "State Defendants") Motion for Summary Judgment (Dkt. 80) and the State Defendants' Supplemental Motion for Summary Judgment (Dkt. 91). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

23

24

    Originally acting *pro se,* the Plaintiff, Mathew Sanchez, filed this case claiming that the Defendants violated his Fourth and Fourteenth Amendment rights against "illegal seizure and

arrest" under the U.S. Constitution, were negligent, and defamed him, in connection with his arrest for committing sex crimes against a minor child.  Dkts. 1-1 and 72.  He contends that he suffered damage as a result of Defendants' actions despite the fact that charges against him were eventually dropped.  *Id.*

The State Defendants are the only remaining defendants.  Dkts. 54 and 77.  They now move for summary judgment on the claims asserted against them.  Dkts. 80 and 91.  For the reasons provided, the motions (Dkts. 80 and 91) should be granted.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  FACTS

Starting in 2015, the Washington State Patrol's ("WSP") Missing and Exploited Children's Task Force ("MECTF") and Operation Underground Railroad ("OUR"), a private non-profit, partnered and collaborated in MECTF's undercover sting operations that targeted online child sex predators.  Dkt. 87-1 at 30.  Known as "Net Nanny Stings," Defendant WSP Det. Carlos Rodriguez posed online as an underage child for several years to see "who expresse[d] an interest in sex with children."  Dkt. 87-1 at 18 and 22.  OUR provided financial donations and other resources to MECTF (and other states' law enforcement agencies), including money for overtime pay.  Dkt. 87-1 at 31 and 200.  In accord with the WSP and OUR's agreement (Dkt. 87-1 at 106-108), after MECTF made Net Nanny arrests, the WSP would acknowledge that OUR provided a portion of the funding in press releases.  *See e.g.* Dkt. 87-1 at 90-92 ("funding for this operation was made possible due in part to support from the public as well as a generous donation from OUR").  Over time, private donations to OUR grew from $925,378.00 in 2013 to $45,943,117.00 in 2020.  Dkt. 87-1 at 33 and 65.  In 2020, the WSP stopped accepting money from OUR.  Dkt. 87-1 at 188.

As it relates to this case, on July 28, 2019, the Plaintiff, a 25 year-old male, responded to Det. Rodriguez's fictitious social media post on an online website "MeetMe" (a website for people 18 and over) pursuant to a Net Nanny operation.  Dkt. 85 at 4.  At the time, Det. Rodriguez was posing as "Anna," her age was listed as 29, and her picture included a can of "Bang," a drink for people 18 years or older.  Dkts. 85 at 4 and 87-1 at 207.  The online chats between the Plaintiff and Defendant Rodriguez began at 6:28 p.m. and stated:

Plaintiff: Hey there (smiley face emoji)

Det. Rodriguez Online Persona: (smiley face emoji with hearts)

Plaintiff:  How's your day going?

Det. Rodriguez Online Persona: Bored watching Netflix

Plaintiff: Awhh by yourself?!(frown emoji) want me to come thru and keep you company (eye roll emoji and eye wink emoji)

Det. Rodriguez Online Persona: Yeah

Det. Rodriguez Online Persona: How old r u fr [for real]

Plaintiff: Haha I'm 25 now wby? [what about you]

Det. Rodriguez Online Persona: Don't get mad I'm 13.  Ur almost 14 and act way older I pretty much raised me and my sister on my own.

Plaintiff: Damn your young cute af [as f**k] but young I wouldn't wanna take advantage of you or have you feel that way if we actually hung out ya know? Like I know how it is we can be friends (emoji with small smile) I'm not mad

Det. Rodriguez Online Persona: K HMU [o.k. hit me up] at 253-285-1163.  I can handle my own trust me. (laughing emoji with tears).

Plaintiff: I don't doubt that at all beautiful (small smile emoji)  I'll hit you up for sure! Wyd [What you doing] tomorrow?

Det. Rodriguez Online Persona: I thing rlly [really]  HMU [Hit me up].  Us im. I'm on here and quarantined I'll get banned

Plaintiff:  Ok I txt you instead chica

Dkts. 62-1 at 5-6; 92-1 at 6-7. (This online portion of the Plaintiff and Det. Rodriguez's exchange was incorporated by reference in the Plaintiff's Amended Complaint.  Dkt. 67 at 10-11.  The Plaintiff does not contest the authenticity of this exhibit.  *Id.*)

The next day, July 29, 2019, the Plaintiff switched to using their private phone numbers and sent several text messages to Det. Rodriguez's online persona "Anna."  Dkt. 85 at 4.  The text messages began at 12:05 a.m.:

> Plaintiff:  Whatsup beautiful, it's papii from mm
>
> Det. Rodriguez Online Persona: Hey daddy. Wassup . . .
>
> so what you want to do en ways
>
> Plaintiff:  What you mean? And go chill at a park or watch a movie at the theater whatever's fun (smile emoji)
>
> Det. Rodriguez Online Persona: idk I don't think we will be a good match rn.  I don't want a boyfriend.
>
> Plaintiff:  I'm not really looking for a girlfriend but you seem fun to be around and I guarantee I'd put a grin on your face (kiss mouth emoji)
>
> Det. Rodriguez Online Persona: like how tell me Papii
>
> (devil emoji)
>
> Plaintiff:  heheh (wink side smile emoji) what are you wearing rn ?  Send me a pic (devil emoji)
>
> I'll start by letting you feel what you wanna feel  (wink side smile emoji)
>
> Det. Rodriguez Online Persona: sorry hon not sending nudes
>
> Plaintiff:  No worrys haha just feeling you out ;3 how does my sitting you on my lap and feeling 9 long hard inches sound (devil emoji) maybe I'll lick my tounge ring down you hehe
>
> Det. Rodriguez Online Persona: (heart eyes smile emoji) . . .
>
> Plaintiff:  . . . when do you want to meet up?  I'm available tomorrow . . .

ORDER ON STATE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 4

Det. Rodriguez Online Persona: kk 2morro

Plaintiff:  For sure (smile emoji) what would you like to do to me if you were feeling me (devil emoji)

Det. Rodriguez Online Persona: I would do everything but anal tbh

are you generous daddy

Plaintiff:  I bet you I could make you like it (wink side smile emoji) finger first but yeah to an extent . . . (smile emoji)

Det. Rodriguez Online Persona: idk never done it.

Plaintiff: I've done finger at most I could get the tip in (smile emoji with tears) I've got a big dick so its hard ;p . . .

Det. Rodriguez Online Persona: And how big

Plaintiff:  . . . it's like 9 inches probly 10 but you'll have to find out yourself . . .

Det. Rodriguez Online Persona: WTF!  I don't know if I can take all of that.  Im tiny

Plaintiff:  Lol we'll see how much you can take I wonder if your sexy lips would fit over it . . .

Det. Rodriguez Online Persona: Are you generous

I like gifts

Plaintiff:  I'll get you something beautiful

Det. Rodriguez Online Persona: Like what Papii

Plaintiff:  I'll let you know when I get it (kiss mouth emoji) so it's a surprise, whatchu up too?

Det. Rodriguez Online Persona: hanging with my gf wbu

Plaintiff:  You girls turn up a lot together?  (smile emoji) what's she think of older guys

More mature?

1    Det. Rodriguez Online Persona: Wym

2    Alot

3    Plaintiff:  That's awesome, was just wondering if she was on the same page as you [symbol unreadable] usually girls like to have fun doing everything together

4

5    Det. Rodriguez Online Persona: yeah she is.  We both 13

Plaintiff:  Cute , can't wait to chill with you she can too if you want her to join us
6    lols jk (wink half smile emoji)

7    Det. Rodriguez Online Persona: In an ask her but she needs gifts too  . . .

8    [later at 2:20 p.m.] So do you want me and my gf or what

9    I'll need to tell her and she wants to know what she gets

10    4 works better

11    Plaintiff: Let's do just us first then we can meet up again when I get paid and have your friend in on the fun thru your experience [symbols unreadable] sounds good

12    If she wants to join today just cuz she can tho I'm not stopping her lol

13    Det. Rodriguez Online Persona: I can ask her but idk if she will . . .

14    Plaintiff:  What part of Bremerton are we meeting up at?

15    Det. Rodriguez Online Persona: its by the manette bridge when you get to

16    Bremerton I can google a store near her and then you can pick me up

17    Plaintiff:  Sounds good beautiful . . .

18    In Brem now

19    Det. Rodriguez Online Persona: K there is a subway right by here 1100 Wheaton way. Jus send a selfie wen u get there and I'll send my addy. . .

20    Can I get some lube cuz r big . . .

21    Plaintiff:  Ok cutie . . .

22    Det. Rodriguez Online Persona:  my gf might still be here but she can leave if you

23    want

24

Plaintiff: I don't mind haha she can join in if she wants . . .

Det. Rodriguez Online Persona: what did you bring us so I can see if she will

she is asking . . .

Plaintiff:  Just some money I haven't seen anything around here tho I'd love to grab you girls a sexy toy from lovers (wink half smile emoji) I only have $40 left on me I had to get gas etc I'll have more next time we hang out tho cutie

[a little later] At the subway . . . Wanna go drink?

Det. Rodriguez Online Persona: yeah get me a coke . . .

we can't get into bars lol . . .

you have condoms right and thanks for the money I really need it

Plaintiff:  No problem and I didn't grab any . . . pull out games strong thooo . . .

Dkt. 92-2 at 3-9.  In describing their text messaging, Det. Rodriguez states that:

Mr. Sanchez was first to suggest coming to hang out with me in my undercover capacity as a 13 year old. Mr. Sanchez talked about the size of his penis being 9 to 10 inches and how he wondered how much I (posing as a child) could take and wondered if my sexy lips would fit over it.

In my undercover capacity I asked Mr. Sanchez if he was generous and told him I liked gifts. The terms generous and gifts are used commonly by persons communicating about paying for sex acts. If a person is generous, it indicates they are willing to pay for sex acts. Gifts represent that payment.  It is something of value for the sex act.  It includes, but is not limited to money, alcohol, video games, and gift cards.

Mr. Sanchez also texted about another 13-year-old girl. In that text exchange, they texted about lubricant for sex acts and Mr. Sanchez was informed the other 13-year-old girl would still be there but was going to leave. Mr. Sanchez stated by text messaging that he didn't mind if she joined in.

Mr. Sanchez was asked during the text exchange what he was bringing the thirteen year old girls and he stated just some money and said he had $40.

Mr. Sanchez was further asked during the text exchange whether he was bringing condoms and was thanked for the money. Mr. Sanchez texted no problem about the money.

ORDER ON STATE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 7

Mr. Sanchez texted he didn't get any condoms but his "pull-out game" was strong. "Pull out game" is common parlance for removing the penis from the vagina during sexual intercourse before ejaculation as a method of preventing an unwanted pregnancy.

Dkt. 85 at 5.

An arrest team was assembled - Defendants WSP Trooper Det. Travis Calton, Trooper Michael Pease, and Trooper Maurice Rincon, all led by Lieutenant William Steen. Dkts. 81 at 2; 83 at 2; 84 at 2; 86 at 3. According to each member of the arrest team, they were given information related to Plaintiff's "intent and text activity with an undercover agent posing as a minor child" that investigators had developed to support the Plaintiff's arrest for several crimes. Dkts. 81 at 2; 83 at 2-3; 84 at 2; 86 at 2-3.

The Plaintiff drove from Tacoma, Washington to Bremerton, Washington in his attempt to meet with "Anna," Det. Rodriguez's online persona. Dkt. 85 at 5. He drove to the wrong house initially. *Id.* Det. Rodriguez texted him the correct address and included a map. *Id.* The Plaintiff arrived and entered the house with the agreed upon amount of money ($40.00). Dkts. 81 at 2; 84 at 2; 85 at 5. He spoke with an undercover officer and then was arrested. Dkts. 81 at 2 and 84 at 2.

The Plaintiff was charged in Kitsap County, Washington with "Rape of a Child 2nd Degree – Attempt" (RCW 9A.28.020) and "Communications with a Child for Immoral Purposes" (RCW 9.68A.090). Dkt. 72.

On August 1, 2019, the WSP issued a press release, stating, in part, that "Nineteen dangerous sexual predators who targeted children in Kitsap County were removed from the streets . . ." Dkt. 87-1 at 209. The Plaintiff was listed as one of the individuals arrested. *Id.* at 210.

**B.  PROCEDURAL HISTORY**

1  The Plaintiff filed a tort claim for damages with the State of Washington on July 22, 2021.

2  Dkt. 72 at 2.  He filed this case in Thurston County, Washington Superior Court on September

3  27, 2021.  Dkt. 1-1 at 3.  It was removed to this Court on December 16, 2021.  Dkt. 1.

4  In his Amended Complaint, the Plaintiff asserts claims for violations of the Fourth and

5  Fourteenth Amendments to the U.S. Constitution against all the State Defendants, for defamation

6  against the WSP and Defendant Rodriguez, and for negligence against the WSP and Defendant

7  Rodriguez.  Dkt. 72.  He seeks damages, including punitive damages, attorneys' fees and costs.

8  *Id.* at 14.

9  **C.  PENDING MOTIONS**

10  On March 23, 2022, the State Defendants moved for summary judgment on all claims but

11  only addressed the Plaintiff's claims for violation of his Fourth amendment, defamation and

12  negligence.  Dkt. 80.  The Plaintiff opposed the motion (Dkt. 87) and the State Defendants filed a

13  reply (Dkt. 89).  The State Defendants were offered an opportunity, if they wished, to clarify a

14  portion of the record and to file a supplemental motion on the Plaintiff's Fourteenth Amendment

15  claim.  Dkt. 90.  The State Defendants have now filed a clarification of the record and their

16  supplemental motion for summary judgment on the Plaintiff's Fourteenth Amendment claim.

17  Dkt. 91.  The Plaintiff has responded and opposes the supplemental motion (Dkt. 93) and the

18  State Defendants have filed a reply (Dkt. 95).  The motions are ripe for consideration.

19  **II.  DISCUSSION**

20  **A.  SUMMARY JUDGMENT STANDARD**

21  Summary judgment is proper only if the pleadings, the discovery and disclosure materials

22  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

23  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is

24

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is

sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

      The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

which is a preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 254; *T.W.*

*Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party.  The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim. *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

will not be "presumed." *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

**B.  FEDERAL CONSTITUTIONAL CLAIM FOR "ILLEGAL SEIZURE AND ARREST" AGAINST WASHINGTON STATE AND THE WASHINGTON STATE PATROL**

1    In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

2    conduct complained of was committed by a person acting under color of law, and that (2) the

3    conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

4    of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(*overruled on other grounds*);

5    *Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an

6    alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350,

7    1354 (9th Cir. 1985).  States, state agencies, and officials acting in their official capacities are not

8    "persons" and so are not subject to a suit for monetary relief under § 1983. *Will v. Mich. Dep't of*

9    *State Police*, 491 U.S. 58, 71 (1989)(holding that "neither a State nor its officials acting in their

10   official capacities are 'persons' under § 1983").

11       The Defendants' summary judgment motion to dismiss all federal constitutional claims

12   asserted against the State of Washington and the WSP and all individual Defendants in their

13   official capacities, to the extent such claims are made, (Dkt. 80) should be granted because this

14   parties are not "people" for purposes of § 1983.  There are no issues of fact and these Defendants

15   are entitled to a judgment as a matter of law.  The § 1983 claims asserted against the State, WSP,

16   and the individually named Defendants in their official capacities should be dismissed with

17   prejudice.

18   **C.  FEDERAL CONSTITUTIONAL CLAIM FOR "ILLEGAL SEIZURE AND
     ARREST" AGAINST THE INDIVIDUAL STATE DEFENDANTS**

19

20       In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the

21   conduct complained of was committed by a person acting under color of law, and that (2) the

22   conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

23   of the United States.  *Parratt* at 535.  To state a civil rights claim, a plaintiff must set forth the

24   specific factual bases upon which he or she claims that each defendant is liable.  *Aldabe v.*

1   *Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Vague and conclusory allegations of official

2   participation in a civil rights violations are not sufficient to support a claim under § 1983.  *Ivey v.*

3   *Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982).

4       Defendants in a Section 1983 action are entitled to qualified immunity from damages for

5   civil liability if their conduct does not violate clearly established statutory or constitutional rights

6   of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815

7   (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In analyzing a qualified

8   immunity defense, the Court must determine: (1) whether a constitutional right would have been

9   violated on the facts alleged, taken in the light most favorable to the party asserting the injury;

10  and (2) whether the right was clearly established when viewed in the specific context of the case.

11  *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001). While the sequence set forth in *Saucier* is often

12  appropriate, it is no longer regarded as mandatory. *Pearson* at 811.  If no constitutional violation

13  is found, the court need not proceed to the second question of whether the officers violated a

14  clearly established right.  *See Vanegas v. City of Pasadena*, 46 F.4th 1159, 1165 (9th Cir.

15  2022).

16              1.   Violation of Constitutional Right?

17      **Fourth Amendment Claim**. The Fourth Amendment prohibits "unreasonable searches

18  and seizures."  The Fourth Amendment is violated when a person is arrested without probable

19  cause or "other justification." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022).

20  A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect has

21  committed, is committing, or is about to commit an offense.  *D.C. v. Wesby*, 138 S. Ct. 577, 586

22  (2018); *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979).  Officers have probable cause to arrest

23  "when there is a fair probability or substantial chance of criminal activity by the arrestee based

24

1  on the totality of the circumstances known to the officers at the time of arrest." *Vanegas* at 1164.

2  To determine whether an officer had probable cause for an arrest, courts "examine the events

3  leading up to the arrest, and then decide whether these historical facts, viewed from the

4  standpoint of an objectively reasonable police officer, amount to probable cause." *Wesby* at 586.

5  Probable cause "is not a high bar." *Id.*

6          The Defendants' motion for summary judgment on the Plaintiff's Fourth Amendment

7  claim (Dkt. 80) should be granted.  The Plaintiff has failed to point to issues of fact, viewed from

8  the standpoint of objectively reasonable officers, that show that the officers did not have

9  probable cause to arrest him.  They were informed of the online and text message exchanges

10  between the Plaintiff and Det. Rodriguez.  "When there has been communication among agents,

11  probable cause can rest upon the investigating agents' collective knowledge.  *United States v.*

12  *Del Vizo,* 918 F.2d 821, 826 (9th Cir. 1990).  Further, the officers observed the Plaintiff come to

13  the house with the agreed upon amount of money. Considering the entirety of the online and text

14  exchanges and Plaintiff's conduct when he arrived, the officers reasonably concluded that there

15  was a "fair probability or substantial chance of criminal activity." *Vanegas* at 1164.

16          The Plaintiff argues that Det. Rodriguez had a financial incentive to arrest the Plaintiff

17  and so did not have probable cause.  He asserts that Det. Rodriguez's unit was getting money and

18  support from OUR and OUR wanted arrests to be made so it could prove to doners they were

19  worth supporting.  He contends that as a result, Rodriguez's credibility is unreliable.  His

20  argument is unavailing.  The Plaintiff does not dispute that he exchanged the online messages

21  and text messages.  These exchanges are significant in determining probable cause for the

22  Plaintiff's arrest.  Further, Det. Rodriguez's personal state of mind and motivations are

23

24

1   immaterial.  Probable cause is judged from the stand point of "an objectively reasonable officer,"

2   *Wesby* at 586, and not on the private state of mind or motivations of the arresting officers.

3        The Plaintiff argues that the website they met on was for people 18 years and older, the

4   picture of "Anna" shows her holding a drink you must be 18 to drink, and seizes on a single line

5   in the online messaging from Det. Rodriguez, "I'm 13.  Ur almost 14 and act way older I pretty

6   much raised me and my sister on my own," and argues that this portion of the online chat

7   demonstrates that he thought they were engaged in role playing and not that he thought that

8   "Anna" was actually 13.  He contends that, based on the age requirements of the website, the

9   drink and that single line, there was not probable cause to arrest him.  The Plaintiff conflates

10  what must be shown in a criminal context by the state and his burden here.  He must point to

11  evidence that, if believed, would lead a fact finder to find that a reasonable officer would not

12  conclude that there was a fair probability that a crime had occurred.  Pointing to one line of the

13  online exchange is not sufficient when considering the entirety of the online and text exchanges

14  and Plaintiff's conduct when he arrived.  It is the totality of the circumstances that are considered

15  and the officers are free to make "common-sense conclusions about human behavior," *Wesby* at

16  587, including that it is widely known that teenagers use websites meant for people 18 years and

17  older.  The Plaintiff has failed to point to issues of fact which would allow a fact finder to

18  conclude that his Fourth Amendment rights were violated.

19       **Fourteenth Amendment**.  The Fourteenth Amendment's due process clause provides that

20  no state shall "deprive any person of life, liberty, or property without due process of law."

21       The Plaintiff has not clearly explained the nature of his Fourteenth Amendment due

22  process claim.  In his response to the State Defendants' supplemental motion for summary

23  judgment on this claim, the Plaintiff states that "this case raises a unique set of facts previously

24

1   not addressed in any case." Dkt. 93 at 3.  He argues that the financial arrangement between

2   MECTF and OUR resulted in a trap that "ensnarled" him and deprived him of his right to

3   "fundamental procedural fairness of due process."  *Id.*

4          The Plaintiff argues that the "totality of the circumstances" are relevant to his due process

5   claim. Dkt. 93 at 3.  He asserts that the State Defendants "had hidden the fact that WSP had a

6   contract with OUR which gave [them] a financial incentive and obligation to conduct the stings

7   and increase arrest numbers."  *Id.*  The Plaintiff maintains that Defendants suppressed and

8   omitted evidence, regarding OUR for example, that would negate probable cause.  *Id.*

9          To the extent that he asserts that he was arrested without probable cause and that violated

10  his Fourteenth Amendment rights, his claim should be dismissed.  If a constitutional claim is

11  covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be

12  analyzed under the standard appropriate to that specific provision, not under the rubric of due

13  process.  *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  Whether there was probable

14  cause for the Plaintiff's arrest should be analyzed under the Fourth Amendment.  As stated above

15  in Section C., the Plaintiff has failed to point to issues of fact that his Fourth Amendment rights

16  were violated.

17         The Plaintiff also contends that the State Defendants knowingly provided false and

18  misleading information to prosecutors and the courts.  Dkt. 93 at 3.  The Plaintiff asserts that

19  Rodriquez had "numerous instances of providing perjured or misleading testimony."  *Id.*  The

20  Plaintiff concludes that the State Defendants "conducted the stings in a manner which knowingly

21  deprived Mr. Sanchez of fundamental fairness and his due process rights."  *Id.* at 3-4.

22         It is not clear whether the Plaintiff intends this claim to be a claim for violation of his

23  procedural due process rights or his substantive due process rights.

24

In any event, the Plaintiff fails to identify exactly what "false and misleading information" was provided to the prosecutors or the court in **his case**.  False or misleading information in other cases is not relevant to his claim.  The Plaintiff's due process claim should be dismissed on that basis alone.

Moreover, to the extent he basis his due process claim on a violation of his procedural due process rights, the claim should be dismissed.  "A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).  The Plaintiff fails to point to facts, which if believed, would demonstrate that he was denied "adequate procedural protections."  He fails to point to procedural protections he was due but did not receive.

To the extent the Plaintiff basis his due process claim on a violation of his substantive due process rights, his claim should also be dismissed.  "There is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018).  A plaintiff can prove deliberate fabrication with direct evidence of fabrication or by circumstantial evidence.  *Id.*

Again, the Plaintiff fails to point to any evidence he contends was false.  The Plaintiff fails to point to "direct evidence of fabrication."  While he alleges that the State Defendants, and Det. Rodriguez "lied" he as failed to point to such evidence.  Further, as this Court has previously noted, while the Plaintiff argues that portions of the online messaging and text messages were absent from Det. Rodriguez's reports, the reports refer the reader to the entire transcript of those messages.

A plaintiff can also prove deliberate fabrication of evidence using circumstantial evidence, in which a plaintiff must support at least one of the following two propositions: "(1) defendants continued their investigation ... despite the fact that they knew or should have known that the plaintiff was innocent; or (2) defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Caldwell* at 1112.

Not only has he not pointed to evidence that was falsely given to the prosecutors or court in his criminal case, the Plaintiff also failed to point to facts from which a jury could conclude that Det. Rodriguez and the State Defendants "continued their investigation . . . despite the fact that they knew or should have known that the plaintiff was innocent." *Caldwell* at 1112. Further, he has not shown that the "defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Caldwell* at 1112. He has not shown that false evidence was deliberately given.

Even if the Plaintiff had shown that there were triable issues on whether the State Defendants deliberately fabricated evidence against him, he must show that "the fabricated evidence was the cause in fact and proximate cause of his injury." *Caldwell* at 1105. The Plaintiff has not pointed to evidence, that if believed, that fabricated evidence was the cause in fact and proximate cause of an injury.

The Plaintiff has failed to show that there are issues of fact as to whether his Fourteenth Amendment rights were violated.

        2.     <u>Clearly Established?</u>

1    The individual Defendants assert that they are entitled to qualified immunity defense.  As

2 to the second *Saucier* step, the Court must determine whether the constitutional rights asserted

3 were "clearly established when viewed in the specific context of the case." *Saucier* at 2156. For

4 purposes of qualified immunity, "[a] right is clearly established when it is sufficiently clear that

5 every reasonable official would have understood that what he is doing violates that right." *Rivas-*

6 *Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021)(*internal quotation marks omitted*). While case law

7 directly on point is not required for a right to be clearly established, "existing precedent must

8 have placed the statutory or constitutional question beyond debate." *Id.* at 7-8. This inquiry

9 "must be undertaken in light of the specific context of the case, not as a broad general

10 proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  Courts in the Ninth Circuit look to

11 "controlling authority or a robust consensus of cases of persuasive authority to determine settled

12 law."  *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1165 (9th Cir. 2022).

13    **Fourth Amendment Claim**. Even if there had arguably been a violation of the Plaintiff's

14 Fourth Amendment rights, the Plaintiff has failed to show that the constitutional rights asserted

15 here were clearly established.  He relies on broad statements of "search and seizure" rights

16 without any reference to the specific context of the situation.  The individual Defendants are

17 entitled to qualified immunity on the Plaintiff's Fourth Amendment claim.

18    **Fourteenth Amendment Claim**.  Even if there had arguably been a violation of the

19 Plaintiff's Fourteenth Amendment rights, the Plaintiff has failed to show that the constitutional

20 rights asserted here were clearly established based on the facts here.  He fails to address the State

21 Defendants' claim to qualified immunity for this claim.  Considering what happened, the

22 Plaintiff does not point to existing precedent that has placed the "constitutional question beyond

23 debate." *Rivas-Villegas* at 7-8.

24

**D.  STATE LAW CLAIM FOR NEGLIGENCE**

To prevail on a negligence claim, a Washington plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Turner v. Washington State Dep't of Soc. & Health Servs*., 198 Wash.2d 273, (2021)(*internal quotation marks and citations omitted*).

The State Defendants' motion for summary judgment on the Plaintiff's negligence claim should be granted.  The Plaintiff failed to respond to the motion for summary judgment on his negligence claim.  He does not offer proof of the elements of his negligence claim. The motion for summary judgment on the negligence claim has merit.  The claim should be dismissed.

**E.  STATE LAW CLAIM FOR DEFAMATION**

To prevail on a defamation claim, the Plaintiff must show (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages.  *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005).

For the basis of his defamation claim, the Plaintiff points to the August 1, 2019 press release by the WSP and Det. Rodriguez.  The press release is attached to this order as Attachment A.

The State Defendants' motion for summary judgment on the Plaintiff's claim for defamation should be granted.  The State Defendants maintain that the statements in the press release are privileged and argue that the Plaintiff cannot meet the second element of his claim – that the communication is "unprivileged."

"Statements of police officers in releasing information to the public and press serve the important functions of informing and educating the public about law enforcement practices." *Bender v. City of Seattle*, 99 Wn.2d 582, 601 (1983).  Accordingly, police officers are protected by a qualified privilege (rather than an absolute privilege) in releasing information to the press

1    and public.  *Id.*  A plaintiff has the burden to establish an abuse of that qualified privilege to

2    recover; the standard of proving abuse of the privilege is high.  *Id.*  The Plaintiff must show

3    abuse of the privilege by clear and convincing evidence.  *Id.*  "[K]nowledge or reckless disregard

4    as to the falsity of a statement is necessary to prove the abuse of a qualified privilege."  *Id.*

5        The Plaintiff has failed to point to clear and convincing evidence that any of the State

6    Defendants had knowledge or recklessly disregarded the existence of false statements in the

7    press release.  The Plaintiff argues that there were facts from which to conclude that he believed

8    he was engaged in a role playing activity with "Anna" - pointing to the same facts that he

9    asserted demonstrated that there was no probable cause to arrest him.  Based on those facts, he

10   maintains, the officers should have known that the statement implying that he and the other

11   nineteen people arrested that during the sting were "dangerous sexual predators" was false.  As

12   stated above, the officers had probable cause to arrest the Plaintiff.  Protestations of innocence at

13   the time of arrest are common.  The Plaintiff has not shown that the State Defendants knew of

14   false statements in the press release at the time.  He has not demonstrated that they recklessly

15   disregarded the existence of false statements in the release.  Arguably and reasonably the

16   contents of the press release could be considered true by the Defendants.  His arguments do not

17   rise to the high standard required to prove abuse of the qualified privilege.  The claim should be

18   dismissed on these grounds and the Court need not reach the State Defendants' other arguments

19   for dismissal of this claim.

20                                    **III.    <u>ORDER</u>**

21        Therefore, it is hereby **ORDERED** that:

22        • The State Defendants' Motions for Summary Judgment (Dkts. 80 and 91) **ARE**

23          **GRANTED**; and

24

ORDER ON STATE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 20

- This case **IS DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 15th day of May, 2023.

ROBERT J. BRYAN
United States District Judge

ORDER ON STATE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT - 21